(73 App. Div. 520.)

### HUTCHINSON et al. v. SIMPSON et al.

(Supreme Court, Appellate Division, First Department.   June 20, 1902.)

CORPORATIONS—PROMOTERS—ACTION FOR ACCOUNTING—PLEADING — EXAMINATION OF DEFENDANTS BEFORE ISSUE JOINED.

Where corporate stockholders, seeking to require promoters to account for secret profits, appear to have complete and accurate information of the facts constituting their cause of action, an order for an examination of defendants to enable them to frame their complaint with "definiteness and certainty" as to the exact limits of defendants' obligation, as determined by the amount expended by them in acquiring the corporate property, and their disposition of a part of the corporate stock which was intended to have been used by them for that purpose, but which was not needed therefor, and which plaintiffs claim it was their duty to return to the corporation, cannot be sustained, as the information relates to the question of damages only, which would be determined on an accounting, and need not be alleged with definiteness and certainty in the complaint, which need only allege that defendants received to their own use and benefit some of the stock, which it was their duty to return to the corporation.

Appeal from special term, New York county.

Action by Archibald A. Hutchinson and another, on behalf of themselves and all other stockholders of the American Malting Company similarly situated, against John W. Simpson and others. From an order of the special term denying a motion to vacate an order for the examination of Grant B. Schley and other defendants to enable plaintiffs to frame their complaint, defendants, with the exception of the American Malting Company, appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

William N. Cohen, for appellants.
William N. Bennett, for respondents.

LAUGHLIN, J. The summons has been served, and the moving affidavits show that it is a representative action brought by the plaintiffs, as stockholders of the American Malting Company, a New Jersey corporation, to require the defendants other than the American Malting Company to account to that company for secret profits alleged to have been realized by them as promoters of the company; and it is stated in the affidavits that the judgment to be demanded "will be that the defendants account to the American Malting Company for all stocks and moneys received by them in the promotion and organization of the American Malting Company, and which is illegally retained and used by them." It appears that John G. Moore, deceased, and all of the other individual defendants, except Eicks, were members of the brokerage firm of Moore & Schley. The defendant Eicks was an employé of this firm. The claim of the plaintiffs, as stated in the moving affidavits, is, in substance, that they especially became stockholders of the American Malting Company in the months of May and October, 1898; that the firm of Moore & Schley obtained options for the purchase of 30 malt houses throughout the country, at an aggregate price unknown to the plaintiffs, but alleged, on information and belief, not to exceed $5,000,000; that thereafter, and on September 28, 1897, they incorporated the American Malting Company, with an authorized capital of $30,000,000, one-half to be preferred and one-half common stock; that their purpose and object in so doing was to sell the malt plants to the corporation at an overvaluation in exchange for its stock, and thereby make a large profit; that in order to do so, and to provide money for the purchase of the plants, they, before incorporating, invited and obtained subscriptions, addressed to Moore & Schley, for $9,000,000 preferred and $4,500,000 common stock, for which the subscribers were to pay $9,000,000; that these subscriptions recited that the subscribers made their subscriptions upon the condition and with the expectation that all of the stock to be issued by the company at its organization was to be used to purchase these plants, upon which Moore & Schley and their associates had options, and for obtaining a working capital; that they selected, as incorporators, officers, and directors of the company, men friendly to their interests and who would execute their will, and at the first meeting of the board of directors a resolution was passed authorizing the issue to the defendant Eicks, in whose name options for the purchase of the malt houses were taken, of $12,500,000 preferred and $13,740,000

common stock, in consideration of his procuring conveyances of the malt plants to the company, and furnishing it about $2,000,000 in cash as a working capital; that, on the day the company was incorporated, Moore & Schley delivered the options and stock subscriptions to the Guaranty Trust Company, authorizing it to collect the latter, and hold the proceeds subject to their order; that the stock was issued to Eicks pursuant to said resolution on September 29, 1897, who deposited it with the Guaranty Trust Company, with authority to divide it up and authorize the issue of stock to the said subscribers in accordance with their subscriptions, which was done; that the Guaranty Trust Company disbursed the proceeds in accordance with the directions of Moore & Schley; that, after all the malt houses had been acquired, there still remained in the hands of the trust company common stock of the par value of $7,740,000, and preferred stock of the value of $500,000, which was not needed to buy the plants, and which should have been returned to the company, but, instead, $200,000 of the common and $400,000 of the preferred stock were issued to Moore & Schley, and the remainder returned to Eicks, by their joint direction. The accounting is desired with reference to the stock thus returned to Eicks, that delivered to Moore & Schley, and that used for the purchase of the plants. It is shown that the plaintiffs are ignorant of what has ultimately become of this stock, and that they have no accurate information as to the actual purchase price of the malt houses. The examination is sought for the purpose of obtaining accurate information as to the amount expended by Moore & Schley in acquiring the malt houses, and with reference to the disposition of the remaining stock which was not needed for such purchase.

It appears that the plaintiffs have had full access to the books of the American Malting Company, and have acquired thereby information, both definite and complete, with reference to the negotiations leading up to the organization of that company, as well as what took place between that company and the appellants, and the negotiations, correspondence, and agreements between them. They have a list of the different malt houses that were purchased, and of the names and residences of the owners, but it is not shown that they have made any attempt to obtain from such owners the selling prices of the plants. Moreover, the information which the respondents seek to obtain by the examination does not relate to any of the material facts required to be alleged in their complaint. It relates to the question of damages only, which would be determined on an accounting. The appellants contend that the stock issued to Eicks was given in purchase of the malt plants, and for the $2,000,000 of working capital which they furnished the company. These respective claims present the main issue as to whether the plaintiffs have a cause of action. It is not necessary for us to decide that question, and its decision should be deferred until it is properly presented. It appears that the plaintiffs have complete and accurate information of all the facts which they claim constitute their cause of action, and the order for the examination cannot be sustained. Their contention is that they need this additional knowledge to enable them to frame their complaint "with definiteness and certainty"; and their attorney states in his affidavit that from the

facts stated to him by the respondents, and obtained by a personal inspection of the books and papers of the corporation, a large part of which are set out in the moving papers, in his opinion the respondents have a good cause of action against the defendants for "an accounting, but the exact limits of the obligation of the defendants cannot be ascertained without an examination of some of them, and the plaintiffs cannot frame their complaint with definiteness and certainty unless they are permitted to examine" the three defendants. In other words, the respondents are cognizant of what took place prior to the issue of the stock by the corporation to the defendant Eicks, and of the circumstances under which the same was issued. Their theory is that on the facts existing at that time, which are fully known to them, it is the duty of Eicks and the other defendants into whose hands the stock passed to account to the corporation for such part thereof as was not used in the purchase of the malt houses, or needed for raising the $2,000,000 which was paid over to the corporation as a working capital. They are in a position, therefore, to frame a complaint in equity for an accounting. They are not required to allege with definiteness or certainty what the accounting will show. So far as the requirements of the Code and practice in that regard are concerned, it will be sufficient to allege that the appellants have received to their own use and benefit some of the stock, which it was their duty to return to the corporation. The rule still obtains that an examination may not be had before issue joined, unless it be satisfactorily shown that it is necessary to enable the plaintiff to frame his complaint. St. John v. Buckley, 39 App. Div. 629, 56 N. Y. Supp. 635; Merritt v. Williamson, 27 App. Div. 121, 50 N. Y. Supp. 113; Clark v. Ennis, 65 App. Div. 164, 612, 72 N. Y. Supp. 581; Shidlovsky v. Levy, 7 App. Div. 611, 39 N. Y. Supp. 1132; Bloodgood v. Slayback, 54 App. Div. 634, 66 N. Y. Supp. 610.

The order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.

---

(74 App. Div. 52.)

### HOCK v. NEW YORK & Q. C. RY. CO.

(Supreme Court, Appellate Division, Second Department. June 19, 1902.)

STREET RAILROADS—INJURY TO PERSON ON TRACK—INSTRUCTIONS—UNEXPECTED PERIL.

Appeal from trial term, Kings county.